PETER HAYNIE, ADMINISTRATOR OF WILLIAM GRAY HAYNIE, v.
THE NORTH CAROLINA ELECTRIC POWER COMPANY AND
C. R. WILLARD & SONS.

(Filed 20 December, 1911.)

1. **Master and Servant—Parent and Child—Employment of Child.**
   A father may stipulate with the employer of his child as to
   the kind of work his child may be engaged in, unless forbidden
   by statute, and the consent of the parent that the child may be
   employed at one kind of labor is not consent that he be put to
   another and more dangerous kind of work.

2. **Same—Contributory Negligence.**
   Contributory negligence on the part of a minor child, 13 years
   old, employed with the consent of the parent to do a certain kind
   of work, is no defense in an action for personal injury received by
   the minor while working for the master under more dangerous
   conditions, to which the parent has not given his consent.

3. **Master and Servant—Parent and Child—Employment of Child—
   Negligence—Safe Place to Work—Consent of Parent—Contract
   —Burden of Proof—Dangerous Surroundings.**
   An actionable wrong is committed by the master in putting a
   minor child, 13 years old, to work under more dangerous condi-
   tions, against the consent of his father, than those under which
   the parent had agreed upon, and evidence of an injury inflicted
   upon the child while thus employed, without the knowledge or
   ratification of the parent, is sufficient to take the case to the jury,
   the burden of proof being on the plaintiff to establish the con-
   tract of employment in his action for damages for a negligent
   killing of the child.

4. **Same—Duty of the Master.**
   The master who has employed a minor child with the consent
   of the parent to work as a water carrier at a certain place, was
   injured while at a different place on defendant's property by
   being thrown from a belt operating defendant's machinery, with
   evidence tending to show that the defendant had agreed with the
   parent that the child should not be permitted to go there: *Held*,
   the master should not be held as an insurer, should the agree-
   ment alleged be proven, but only to use the due diligence and care
   to keep the child away from the machinery and at the work he
   was hired to do, or else return him to his parent.

APPEAL from *Webb, J.,* at May Term, 1911, of MADISON.

Civil action to recover damages for the death of William Gray Haynie, plaintiff's son, killed while in the employ of the defendants, who were constructing a dam across French Broad River.

At the close of the evidence for plaintiff a motion to nonsuit was sustained, and from the judgment rendered the plaintiff appealed.

*Locke Craig, Moore & Rollins, and Jones & Williams for plaintiff.*

*Martin & Wright for defendant.*

BROWN, J. The evidence offered by plaintiff tends to prove that his son, the intestate, aged 13 years, was killed in the engine-room of defendants, situated on west side of the French Broad River, about 12 July, 1910, by falling on the belt connected with the engine. The evidence tends to prove that the boy was employed by defendants Willard & Son as a water carrier for the men engaged on the east side of the river, in building a railroad track, and that on the west side of the river were situated all the engines and machinery for blasting and moving rock, etc.

The evidence shows that the time the boy was killed the engineer in charge of the engine was Raymond Turner, aged 20. The boy was killed by falling on the belt; the belt threw him off between the belt and the wall; his skull was cracked, his leg broken, and he was mashed to pieces and died in four hours.

The boy had often been seen playing around the belt by Turner, the engineer, and Correll, the foreman, and he was notified of the danger, but kept on playing around the belt. The evidence tends to show further that C. R. Willard knew of the boy's conduct, and that the engineer and Correll had repeatedly warned the boy.

The foundation of plaintiff's action is the allegation that his son was *non sui juris,* inexperienced and incapable of appreciating great danger, and, by reason of his youth and inexperience, careless in incurring danger; that he hired his son to defendants to work upon the east side of the river as a water

HAYNIE v. POWER CO.

carrier, away from the dangerous machinery, and he should be protected from such dangers by the defendants." Plaintiff avers that this agreement was violated by defendants and his son permitted to go in the engine-house on west side of the river and to be around and about the machinery, in consequence of which he was killed.

The plaintiff does not base his claim upon any defective machinery, but upon a distinct violation by defendants of the contract of hiring. Upon the allegations of the complaint the burden rests upon plaintiff to show a breach of the contract and that it was the proximate cause of his son's death.

The plaintiff testifies that he consented to the employment of his son by defendants for the purpose of carrying water on the east side of the river, and that he forbade them to let his son go on the other side where the machinery was; that the foreman promised that his son would be kept at work on the east side, and that he would see to it.

It is well settled that the father may stipulate as to the kind of work his child may be employed in (unless forbidden by statute), and the consent of the parent that the child may be employed at one kind of labor is not consent that he be placed in another and a more dangerous kind of work. *Braswell v. Oil Co.,* 66 S. E., 539. Thus it was held that the fact that a parent hired his son as a "doffer boy" did not authorize the employer to change his work and place in more dangerous environments. *Cotton Mills v. King,* 112 S. W., 132; *Hendrickson v. R. R.,* 30 L. R. A., U. S., 311. The notes to this case are very instructive and contain many cases illustrating and supporting this view.

The sum and substance of the many cases cited in those notes are that it is a general rule that an employer putting a minor servant, against his parent's consent, to do work by which the child is injured, commits an actionable wrong for which the employer is liable, although there is no other evidence of negligence upon his part. *Union Pac. R. R. v. Fort,* 17 Wallace, 553, and cases cited in Rose's notes annotating this case. And under such circumstances it is also held that the minor servant's

contributory negligence is no defense to such action. *Marbury Lumber Co. v. Westbrook,* 121 Ala., 179, and cases cited.

As illustrating this doctrine, we may refer to cases in *ante-bellum* days where slaves were hired out to perform certain kinds of work and within certain limits, and the owner was permitted to recover damages for a breach of the contract because of injury to the slaves. *Slocumb v. Washington,* 51 N. C., 357; *Spivy v. Farmer,* 3 N. C., 339.

In the brief of the learned counsel for the defendant it is contended:

1. That plaintiff failed to show that defendants violated any duty to plaintiff's intestate. The evidence, if believed, shows that defendants violated the contract of hiring.

2. That there is no evidence that any act or omission of defendant was the proximate cause of the boy's death. From the evidence it is a just inference which a jury may draw that if the defendants had carried out the agreement and kept the boy away from the machinery or returned him to his father, the injury would not have occurred.

3. That all the evidence shows that the boy was guilty of negligence and disobedience of orders in going into the engine-room where he was killed.

To guard against that was the very reason why the plaintiff restricted his child's employment and required the defendants to confine him to the east side of the river. Under such circumstances the defendant cannot avail themselves of such defense. *Marbury Lumber Co. v. Westbrook, supra.*

We do not mean to hold that the defendants became insurers of the intestate's life, but if the agreement be as testified to by plaintiff, it was the duty of defendants to use due diligence and care to keep him away from the machinery and at the work he was hired to perform or else to return him to his father.

It may be that the father waived the terms of the agreement and acquiesced in his son working on the west side of the river, but the burden would be on defendants to show that, unless the facts appear from the plaintiff's own evidence.

The judgment of nonsuit is set aside.

New trial.